IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

**William Jeffrey Lewis**, ) Civil Action No. 2:13-3465-RMG-BM

Plaintiff,

v.

) **REPORT AND RECOMMENDATION**

**Deputy Robert Sarvis, Sheriff A. Lane Cribb, and Georgetown County Sheriff's Office,**

Defendants.

This action was originally filed by the Plaintiff in the South Carolina Circuit Court, Fifteenth Judicial Circuit. It was subsequently removed to this United States District Court on December 12, 2013 on the grounds that one or more of the claims asserted in the Complaint arise under the Constitution and laws of the United States. 28 U.S.C. § 1441(b).

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on February 4, 2015. After receiving an extension of time to respond, Plaintiff filed a memorandum in opposition on March 24, 2015, following which the Defendants filed a Reply memorandum on April 15, 2015.

The Defendants' motion is now before the Court for disposition.[1]

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), D.S.C. The Defendants have has filed a motion for summary judgment. As this (continued...)





**Background and Evidence**[2]

Plaintiff was employed as the Manager at R&R Metal Co., Inc., a scrap metal dealer. Plaintiff's Deposition, pp. 38, 75. R&R Metal purchases metal from the general public and from industries; cleans it, processes it, packages it, stores it, and sells it to larger metal companies. Plaintiff's Deposition, p. 41. Plaintiff testified that it is not unusual (once or twice a year) for a police officer or other law enforcement personnel to come to R&R Metal to provide an alert or notice that certain materials may have been stolen and may try to be sold, and that between 2003 and 2011, R&R Metal purchased scrap metal that turned out to have been stolen around ten to fifteen times. Plaintiff's Deposition, pp. 81-82. Plaintiff testified that R&R Metal tries not to buy stolen items because, if someone then comes in looking for it and it turns out to have been stolen, R&R Metal just turns it over to the rightful owner and the business is "out" the money it paid for it. Plaintiff's Deposition, pp. 80-81.

In March 2011, the Defendant Robert Sarvis, a deputy with the Georgetown County Sheriff's Office, came to the scrap yard and told the Plaintiff that some bronze vases may have been stolen from a cemetery and asked Plaintiff and Plaintiff's employees to be on the lookout for them and to call if someone brought them in to sell. Plaintiff's Deposition, pp. 73-75. Plaintiff in turn told his employees to "be on the lookout for a bronze vase that usually is found in a cemetery", although he does not remember whether he specifically told Barry Carmichael, a processor who sometimes did

---

[1](...continued)
is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).





purchasing depending on how busy they were. Plaintiff's Deposition, pp. 75-76.

On July 11, 2014, Jeremy Greene brought eight brass vases to the scrap yard to sell. Carmichael was doing purchasing at that time and he took the items and gave Greene a slip of paper identifying the items as thirty-five pounds of clean brass. Greene then took that ticket and brought it inside the office to where the Plaintiff was and presented it to him for payment. The ticket did not identify the brass as being vases. See Defendants' Exhibit (Court Docket No. 26-3). Plaintiff testified that he got Greene's name and license plate number, and paid him for the thirty-five pounds of brass. Plaintiff's Deposition, p. 95. Plaintiff testified that the next day, when he was walking through the warehouse, he saw the eight vases in the warehouse. Plaintiff says he then asked his son Andrew (who also worked at the business) where the vases had come from, and Andrew told him that Carmichael had bought them the previous day. Plaintiff testified that he put the vases in a box, found Carmichael and told him not to buy anymore of these vases, and to let him [Plaintiff] know if anyone else brought any of these vases in to sell. Plaintiff's Deposition, pp. 103-104. Plaintiff testified that "I took that box and put it off to the side in the warehouse so they wouldn't get processed. And I thought to myself, somebody is going to come looking for these. And then I went back to work". Plaintiff's Deposition, p. 104. Plaintiff testified that he did not call Investigator Sarvis at that time because "we were busy". Id.

Two days later (July 14, 2014), Greene returned to R&R Metal with seventeen more vases. Plaintiff's Deposition, pp. 121-122. Carmichael informed Plaintiff, and Plaintiff went out and told Greene that they "weren't buying any more of these". Greene then left, while Plaintiff called the Georgetown Police Department. Plaintiff's Deposition, p.125. Plaintiff told the police that "we have a guy here that brought in what I thought was stolen material. And we had refused to buy it. And I





gave him the name, the license plate number, and the description of the vehicle". Plaintiff's Deposition, pp. 126. The investigator with the Georgetown Police Department then contacted Sarvis, and told him that Plaintiff had reported an individual attempting to sell stolen vases, and that Plaintiff had provided the name and vehicle tag number for the individual. See Sarvis Supplemental Report, p. 3. As a result of the information provided by the Plaintiff, Greene was apprehended and the vases were recovered. Sarvis Deposition, p. 37; see also Greene Incident Report, p. 3.

Following Greene's apprehension, Sarvis went to R&R Metal to meet with the Plaintiff, during which Plaintiff introduced Sarvis to Carmichael and turned over the cardboard box which contained the eight brass grave vases Carmichael had previously purchased. See Lewis Incident Report, p. 3; see also Plaintiff's Deposition, pp. 127-128. About a week later, Sarvis asked Plaintiff to come to the Department to give a statement about the incident. When Plaintiff arrived at the Sheriff's Office, he was mirandized and Sarvis conducted a recorded interview. Plaintiff's Deposition, pp. 129-131, 161; see also Court Docket No. 26-8. Plaintiff again relayed what had happened. Plaintiff's Deposition, p. 131. Sarvis asked Plaintiff why he had not called the Sheriff's Office to tell them about the eight vases they already had before Greene came back the second time, and Plaintiff responded that he understood "that was wrong, and I understand I probably should have called you when I realized we had them, but I didn't until this guy came back". Plaintiff's Recorded Interview, p. 9. Sarvis also asked the Plaintiff if there had been any doubt in his mind when he saw those vases that they were stolen, to which Plaintiff responded "I knew they were stolen. I knew that whoever brought them they didn't belong to them". Plaintiff's Recorded Interview, p. 14.

On July 26, 2011, Sarvis presented an affidavit to a County Magistrate in which he attested:





> That on or about July 11, 2011 while at 2627 Front St. Ext. of Georgetown County, the Defendant William L. Lewis did commit the crime of Receiving Stolen Goods in that he did obtain, unlawfully maintain possession 8 stolen brass grave vases of which he had reason to believe were stolen. The total estimated value of the stolen vases was approximately $1,000, this being against the peace and dignity of the State of South Carolina and a violation of S. C. Code of Law 16-13-0180(A).

See Defendants' Exhibit (Court Docket No. 26-4).

The County Magistrate signed the arrest warrant, following which Sarvis called Plaintiff, told him that a warrant had been issued for his arrest, and that he needed to come to the Sheriff's Department. Plaintiff's Deposition, pp. 132-133. Plaintiff went where he was instructed, and was taken into custody, handcuffed, and placed in a patrol car. Plaintiff's Deposition, pp. 133-134. Plaintiff had before that time never in his life been arrested. Plaintiff's Deposition, p. 161. Plaintiff subsequently appeared in bond court, but because the Judge did not have the proper paperwork, Plaintiff was required to stay in jail overnight until bond court the following morning. Plaintiff was required to change into prison clothes, and was placed in a cell with three other people (Plaintiff testified the cell was designed for only two people). Plaintiff's Deposition, pp. 140-148.

Plaintiff retained attorney Gregory Askins to represent him. Askins met with Sarvis on August 10, 2011, and Askins attests that Sarvis "acknowledged that he did not believe [Plaintiff] was a criminal" and that "his problem with [Plaintiff] was the delay in calling law enforcement after [Plaintiff] discovered the stolen vases had been purchased by an employee who did not know better at the time". Askins further attests that "Sarvis had in mind working out some type of agreement like they do often in Magistrate's Court for drug cases which would basically delay the trial for two or three months during which time [Plaintiff] would stay out of trouble, have no conflict with the law and then have the charges dropped". Askins also attests that "Sarvis stated that he was concerned





about a civil lawsuit by [Plaintiff]". However, after learning that the dismissal procedure they had discussed only applied to drug court cases where a Defendant had pled guilty, he and Sarvis "came to a mutual agreement, in the presence of [Plaintiff], that if [Plaintiff] did not get in any trouble with the law from that time until at least a couple of months, then Sarvis would drop the charges. Askins attests that he "made it clear to Mr. Sarvis that I firmly believed this was not a criminal matter as there was not any intent by [Plaintiff] personally or on behalf of the corporation to buy stolen goods", and that Sarvis agreed that Plaintiff was "not a criminal and that he too believed [Plaintiff] did not intend to purchase the goods but he [Sarvis] was upset that it took two days for [Plaintiff] to inform law enforcement". Askins attests that as the trial date approached, he again asked Sarvis to drop the charges against Plaintiff since he had been free of any criminal problems, but that "Sarvis stated that he had decided not to drop the charges and stated that he was concerned about a possible lawsuit by [Plaintiff] against him or the Sheriff's Office". Askins attests that they went to trial before a jury, and that at the conclusion of the government's case the judge directed a verdict in favor of the Plaintiff and dismissed the charges. See generally, Askins Affidavit.

Plaintiff thereafter filed this lawsuit asserting a claim of unlawful seizure against all three of the Defendants pursuant to 42 U.S.C. § 1983 (First Cause of Action), a state law claim for false imprisonment against the Defendants (Second Cause of Action), a claim for malicious prosecution against the Defendants pursuant to § 1983 and state law (Third Cause of Action), a state law claim for abuse of process against the Defendants (Fourth Cause of Action), a state law claim for negligence against the Defendants (Fifth Cause of Action), a state law claim for gross negligence against the Defendants (Sixth Cause of Action), a state law claim for assault and battery against the Defendants (Seventh Cause of Action), a state law claim for invasion of privacy against the





Defendants (Eighth Cause of Action), a state law claim for defamation and defamation per se against the Defendants (Ninth Cause of Action), a state law claim for negligent hiring, training and supervision against the Defendant Lane Cribb and Georgetown County Sheriff's Office (Tenth Cause of Action), a state law claim for negligence against Cribb and the Georgetown County Sheriff's Office (Eleventh Cause of Action), a state law claim for gross negligence against Cribb and the Georgetown County Sheriff's Office (Twelfth Cause of Action).[3] See generally, Plaintiff's Complaint.

**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P.[4] The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).

---

[3]Although Cribb and the Sheriff's Department are also named as Defendants in Plaintiff's Fifth and Sixth Causes of Action for negligence and gross negligence (which are also asserted against Sarvis), Plaintiff's Eleventh and Twelfth Cause of Action only pertain to Plaintiff's appearance in bond court.

[4]Although the Plaintiff has asserted twelve causes of action, the Defendants only discuss Plaintiff's First, Second (arguably), Third and Fourth Causes of Action in their motion for summary judgment.





**I.**

**(Federal Claims)**

Plaintiff's federal claims are for unlawful seizure (arrest) [First Cause of Action] and malicious prosecution [Third Cause of Action], both of which are asserted against all three (3) Defendants. These are two separate claims

"To prevail on a false arrest claim, a Plaintiff must establish that his arrest was not lawful". Martin v. Lott, No. 07-3782, 2010 WL 597209, at * 2 (D.S.C. Feb. 16, 2010). Thereafter, the continuation of the charges following the arrest is what distinguishes a claim of malicious prosecution from one for false arrest or imprisonment.[5] See Wallace v. Kato, 549 U.S. 389 (2007) ["Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process - when, for example, he is bound over by a Magistrate or arraigned on charges . . . Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process."] (internal citations omitted); see also Panzica v. Corrections Corp. of America, 559 Fed.Appx. 461, 464-465 (6th Cir. Mar. 17, 2014)[Distinguishing between malicious prosecution and false imprisonment]; Singer v Fulton County Sheriff, 63 F.3d 110, 117 (2d Cir. 1995) (quoting Prosser and Keeton on Law of Torts § 119, pp. 885-886 (5th ed. 1984)["If there is a false arrest claim, damages for that claim

[5]Plaintiff does not really discuss whether his unlawful seizure claim in his First Cause of Action is for false arrest, false imprisonment, or both. While these are technically two separate claims, they both require a showing that the restraint or arrest was unlawful. Martin, 2010 WL 597209, at * 1-2; Andrews v. Piedmont Airlines, 377 S.E.2d 127, 129-130 (S.C.Ct.App. 1989). As such, both claims hinge on whether there was probable cause to make the arrest.





cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself"]).

Both of these claims require a showing that Plaintiff's arrest and prosecution were without probable cause. Wortman v. Spartanburg, 425 S.E. 2d 18, 20 (S.C. 1992) ["The fundamental question in determining whether an arrest is lawful is whether there was 'probable cause' to make the arrest"]; Lambert v. Williams, 223 F.3d 257, 260-261 (4th Cir. 2000) [Claim for malicious prosecution requires a showing that the initiation or maintenance of the proceeding against the Plaintiff was without probable cause to support it, and that the proceedings were terminated in favor of the Plaintiff]. In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest, and "[t]o prove an absence of probable cause, [a plaintiff] must allege a set of facts which made it unjustifiable for a reasonable officer to conclude that [he] was violating [the law]". Brown v. Gilmore, 278 F.3d 362, 368 (4th Cir. 2002). Considered in the light most favorable to the Plaintiff, the evidence is sufficient to create a genuine issue of fact as to whether Plaintiff was arrested and prosecuted without probable cause to survive summary judgment, because it presents a genuine issue of fact as to whether Plaintiff's arrest and prosecution was the result of Sarvis presenting an affidavit to a judicial officer (resulting in the issuance of a warrant) that either had a "reckless disregard for the truth", or that omitted material facts with the intent to make the affidavit misleading or with reckless disregard of whether they made the affidavit misleading. Miller v. Prince George's County, MD, 475 F.3d 621, 627 (4th Cir. 2007); see also United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990).

Specifically, in submitting his affidavit to the judge, Sarvis failed to inform the judge





that Plaintiff was not aware that the stolen goods had been received at R&R Metal, that when he did find out these goods had been received and suspected they might be stolen, he immediately had them set aside for safe keeping and instructed his employee not to purchase any more of these goods and to let him know if anyone else brought in such goods to sell, and that when the same individual did return two days later Plaintiff immediately reported the matter to the police together with information which allowed the culprit to be caught, as well as turned over the goods he had separated out for safekeeping two days earlier. However, as noted, once this information was provided to the judge at trial (who was the same judge who signed the warrant), the judge found no basis for the charges and directed a verdict of not guilty. Therefore, it is a question of fact for the jury as to whether Sarvis, in submitting his affidavit to the judge, left out material facts that he "knew would negate probable cause". Miller, 475 F.3d at 627; see also Colkley, 899 F.2d at 301; Muhammed v. Klotz, 36 F.Supp. 2d 240, 243 (E.D.Pa. 1999)["Thus, at the summary judgment stage the only inquiry is the threshold one of determining whether there is a need for a trial, that is, 'whether the evidence presents a sufficient disagreement to require submission to [the trier of fact] or whether it is so one-sided that one party must prevail as a matter of law."], citing Anderson v. Liberty Lobby, Inc., 477 U.S. 247, 250-252 (1986). As such, the Defendant Sarvis is not entitled to summary judgment on Plaintiff's First and Third Causes of Action for false arrest and malicious prosecution.[6]

---

[6]Sarvis does also argue that, even assuming a constitutional violation occurred, he is entitled to dismissal of these claims on the basis of qualified immunity. However, Sarvis is entitled to this defense only insofar as the conduct alleged did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). During the time period at issue, it was certainly well established that the law regarding receiving stolen goods contains a mens rea requirement, and that an individual charged with this crime must not only knowingly receive stolen goods, but that they must do so with a fraudulent (continued...)





With respect to the other two Defendants, however, they are both entitled to summary judgment on these claims. First, the Defendant Georgetown County Sheriff's Office is a state office, and as such enjoys Eleventh Immunity from suit in this Court. Milla v. Colleton County Sheriff's Office, No. 15-1253, 2015 WL 2172681 at * 1 (D.S.C. May 7, 2015) [Since sheriff's departments are considered states agencies and arms of the state, they are entitled to Eleventh Amendment Immunity]; see also Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 99 (1984); Will v Michigan Dep't of State Police, 491 U.S. 58, 66, 71 (1989); Brooks-McCollum v. Delaware, 213 Fed.Appx. 92, 94 (3rd Cir. 2007); Coffin v. South Carolina Dep't of Social Services, 562 F.Supp. 579, 583-585 (D.S.C. 1983); Belcher v. South Carolina Board of Corrections, 460 F.Supp. 805, 808-809 (D.S.C. 1978).

As for the Defendant Cribb, Plaintiff has only sued this Defendant in his official capacity. Complaint, ¶ ¶ 7, 124. The Sheriff in his official capacity is also entitled to Eleventh Amendment immunity from suit in this Court. Comer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996) [suit against Sheriff of Greenville County: ". . . Sheriff Brown is an arm of the State."]. Further, even if Plaintiff had sued Sheriff Cribb in his individual capacity (which he did not), Plaintiff has

---

[6](...continued)
intent. State v. Rickenbacker, 198 S.E. 43, 44 (S.C. 1938); State v. White, 44 S.E.2d 741, 742 (S.C. 1947), (abrogation on other grounds recognized by State v. Salisbury, 541 S.E.2d 247, 248 (S.C. 2001)). It was also well established at the time of the events at issue that a police officer may be liable for a false arrest/malicious prosecution claim where the officer deliberately or with reckless disregard for the truth makes materially false statements in an affidavit supporting a request for a warrant, failed to inform the judicial officer of facts the law enforcement officer knew would negate probable cause, or omitted material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading. Miller, 475 F.3d 627-268; see also Smith v. Reddy, 882 F.Supp. 497, 499 (D.Md. 1995), aff'd, 101 F.3d 351 (4th Cir. 1996). The evidence submitted presents an issue of fact as to whether Sarvis acted contrary to this established law. Therefore, Sarvis is not entitled to qualified immunity on these claims.





presented no evidence to show that Cribb played any role in the events at issue. Rather, it is readily apparent that Cribb is only included as a Defendant in this case because he is the Sheriff of Georgetown County, and Sarvis' boss. However, the doctrines of vicarious liability and respondeat superior are not applicable to § 1983 cases. Vinnedge v. Gibbs, 550 F.2d 926, 927-929 & nn. 1-2 (4th Cir. 1977). Therefore, Plaintiff must have presented evidence to show that Cribb had "personal knowledge of and involvement in the alleged depravation of [Plaintiff's] rights" in order for this Defendant to be liable. Harveck v. Smith, 814 F.Supp.2d 608, 627 (E.D.Va. 2011), citing Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985). Plaintiff has presented no such evidence. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim].

Therefore, both Cribb and the Georgetown County Sheriff's Office are entitled to dismissal as party Defendants with respect to these two causes of action asserted as federal constitutional claims.

**II.**

**(State Law Claims)**

Including Plaintiff's state law claim for malicious prosecution (part of his Third Cause of Action, which also includes the federal claim discussed herein, supra), Plaintiff has asserted eleven state law claims against the Defendants. Plaintiff asserts these claims against Sarvis and Cribb in their official capacities, Sarvis in his individual capacity, as well as against the Georgetown County Sheriff's Department.

While these Defendants would have ordinarily been entitled to Eleventh Amendment immunity from suit in federal court for these claims, the Defendants' removal of this case to federal





court has waived the State's immunity from suit in this Court with respect to any claims the Defendants would otherwise have been subject to suit on in state court. Lapides v. Board of Regents of the University System of Georgia, 535 U.S. 613, 619 (2002) [A State's voluntary appearance in federal court waives sovereign immunity for claims where a state has consented to suit in its own courts for such claims]; see also Cameron v. Cox, No. 10-1278, 2011 WL 1235308, at * 4 (D.S.C. Jan. 21, 2011), adopted by, 2011 WL 1212177 (D.S.C. Mar. 30, 2011). Through enactment of the South Carolina Torts Claims Act (SCTCA), South Carolina has generally consented to suit for tort claims filed against it in state court. Briggs v. South Carolina Dept. of Corrections, No. 13-1348, 2014 WL 1278173 at * 21 (Mar. 27, 2014). Therefore, the Georgetown County Sheriff's Office[7] is subject to suit in this Court for these claims.[8]

**False Imprisonment**. With respect to Plaintiff's state law claim for false imprisonment asserted in his Second Cause of Action, to prevail on this claim Plaintiff must show

[7]While sometimes the Sheriff in his official capacity will be the named Defendant, for purposes of further prosecution of this case the Georgetown Sheriff's Office can suffice as the proper party Defendant with respect to Plaintiff's state law tort claims. Cf. Ramos v. Berkeley County, No. 11-3379, 2012 WL 5292899, at * 3, n. 5 (D.S.C. Aug. 7, 2012), adopted by 2012 WL 5292895 (D.S.C. Oct. 25, 2012); but see Martin, 2010 WL 597209, at * 1 [Finding that proper defendant under the South Carolina Tort Claims Act is the Sheriff in his official capacity], citing to S.C. Code Ann. § 15-78-70(c). Although Plaintiff has also sued Sarvis in his individual capacity, since Plaintiff alleges Sarvis was acting in his capacity as a Sheriff's Deputy during the events at issue; see Complaint, ¶ ¶ 2, 7, 23; he is not subject to suit in his individual capacity for these claims. Flateau v. Harrelson, 584 S.E.2d 413, 417 (S.Ct.App. 2003) [Under the SCTCA, " a governmental employee acting within the scope of official duty is exempt from personal liability"]; Cornelius v. City of Columbia, No. 06-3215, 2007 WL 2116466, * 3 (D.S.C. March 6, 2007), adopted in part by, 2011 WL 2116459 (D.S.C. July 19, 2007).

[8]This is in contrast to claims for which the State has not waived immunity from suit in state court, such as Plaintiff's claims asserted in his First and Third Causes of Action under § 1983. See Briggs, 2014 WL 1278173, at * 21, n. 14.





that 1) the Defendant restrained him, 2) the restraint was intentional, and 3) the restraint was unlawful. Martin, 2010 WL 597209, at * 1. The question of whether such restraint was lawful is in turn determined by whether the restraint was supported by probable cause. Id.; see also Jones v. City of Columbia, 389 S.E.2d 662, 663 (S.C. 1990). Therefore, as the undersigned has already determined that there is a question of fact as to whether Plaintiff's arrest and imprisonment was supported by probable cause, the Defendant is not entitled to summary judgment on this claim.

**Malicious Prosecution**. With respect to Plaintiff's state law malicious prosecution claim asserted in his Third Cause of Action, the general requirements for this cause of action under state law are the same as those for a constitutional claim under federal law, except that a state law claim for malicious prosecution also requires a showing of malice. See Pallares v. Seinar, 756 S.E.2d 128, 131 (S.C. 2014) [Malice is an element of state law claim for malicious prosecution]. Malice is defined as "the deliberate intentional doing of an act without just cause or excuse". Law v. S. C. Depart. of Corrections, 629 S.E.2d 642, 649 (S.C. 2006) (internal cites omitted). Significantly, in an action for malicious prosecution, malice may be inferred from a lack of probable cause to institute the prosecution. Pallares, 756 S.E.2d at 131. Since the undersigned has already found a genuine issue of fact exists with respect to whether there was probable cause for the issuance of the warrant in this case, a question of fact with respect to malice is presented under state law, and the Defendant Sheriff's Department is not entitled to summary judgment on Plaintiff's state law claim for malicious prosecution.

**Abuse of Process**. With respect to Plaintiff's Fourth Cause of Action for abuse of process, this tort "is intended to compensate a party for harm resulting from another party's misuse of the legal system". Polaris, 756 S.E.2d at 133, citing Food Lion, Inc. v. United Food & Commercial





Workers Int'l. Union, 567 S.E.2d 251, 255, n. 5 (S.C.Ct.App. 2002). The essential elements of an abuse of process claim are 1) an ulterior purpose, and 2) a willful act in the use of the process that is not proper in the regular conduct of the proceeding. Polaris, 756 S.E.2d at 370. Plaintiff alleges that Sarvis caused his arrest and prosecution for an ulterior purpose in that, among other reasons, he "was angry or otherwise displeased that Plaintiff, having been asked to alert the Sheriff's Office to any bronze vases brought the company where he works, alerted the [Georgetown] Police Department instead". However, even assuming this allegation to be true for purposes of summary judgment, "[a]n allegation that a party had a 'bad motive' or an 'ulterior purpose' in bringing an action, standing alone, is insufficient to sustain an abuse of process claim". Polaris, 756 S.E.2d at 371, citing D. R. Horton, Inc. v. Wescott Land Co., 730 S.E.2d 340, 352 (S.C.Ct.App. 2012). Rather, to sustain a claim for abuse of process, the evidence must show that the Defendant used an otherwise legitimate process to obtain a collateral objective *not relating to that process*. Such an improper purpose "usually takes the form or coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or club". Id.; see also Hainer v. Am. Med. Int'l., Inc., 492 S.E.2d 103, 107 (S.C. 1997) [Noting that the improper purpose usually takes the form of coercion to obtain a collateral advantage, and that "[t]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions"].

Even though the reason cited hereinabove is not sufficient, standing alone, to support Plaintiff's abuse of process claim, the evidence in total (considered in the light most favorable to the Plaintiff) is sufficient to give rise to an issue of fact as to whether Sarvis had a collateral objective not relating to that process; i.e. whether he used the criminal process and continued with prosecution





of the charge against the Plaintiff in order to prevent Plaintiff from being able to bring a separate civil lawsuit against him for false imprisonment or malicious prosecution. Specifically, Askins attests in his affidavit that Sarvis told him that he was concerned that if he did not prosecute the Plaintiff, the Plaintiff would bring a civil suit against him and/or the Sheriff's Office. Askins Affidavit, pp. 1, 3. Further, Sarvis himself testified at his deposition that, if he did not prosecute the Plaintiff, a concern that Plaintiff would sue him for false arrest "would always be a consideration". Sarvis Deposition, pp. 104-105. This evidence is sufficient to raise a genuine issue as to whether Sarvis had an improper collateral motivation for continuing with Plaintiff's prosecution to survive summary judgment on this claim.

**Remaining State Law Claims**. Finally, with respect to the remainder of Plaintiff's state law causes of action, although the Defendants do ask in their motion for summary judgment for dismissal of this case in toto, they have provided this Court with no basis for granting summary judgment on these other state law causes of action. The Defendants in their motion for summary judgment have not moved for summary judgment on those claims, and neither Plaintiff or the Defendants have briefed these other state law causes of action. Therefore, to the extent Defendants seek dismissal of these remaining claims, the motion should be denied.

**Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted, in part,** and **denied in part.** Specifically, the Defendants Cribb and Georgetown County Sheriff's Office are entitled to dismissal as party Defendants from Plaintiff's federal constitutional claims for illegal seizure (false arrest) and malicious prosecution as set forth in his First and Third Causes of Action. The Defendant Sarvis is also entitled to summary judgment





on these claims in his official capacity. However, Sarvis is not entitled to summary judgment on these claims in his individual capacity. Therefore, Plaintiff's federal constitutional claims should proceed against Sarvis pursuant to 42 U.S.C. § 1983 in his individual capacity.

With respect to Plaintiff's state law causes of action, the Defendants Sarvis and Cribb are both entitled to dismissal as party Defendants under these state law claims, as the proper party Defendant for these claims under the South Carolina Tort Claims Act is the Georgetown County Sheriff's Office. For the reasons set forth herein, the Defendant Georgetown County Sheriffs Office is not entitled to summary judgment on any of Plaintiff's state law causes of action, which should be allowed to proceed to trial against this Defendant only.[9]

The parties are referred to the Notice Page attached hereto.

Bristow Marchant
United States Magistrate Judge

May 26, 2015
Charleston, South Carolina

[9]Or, alternatively, against the Sheriff in his official capacity only. Martin, 2010 WL 597209, at * 1.





**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a Defendants' Exhibit novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).



